Filed 12/14/21  P. v. Scott CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE, <br><br> Plaintiff and Respondent, <br><br> v. <br><br> GARY SCOTT, <br><br> Defendant and Appellant. | F082188 <br><br> (Super. Ct. No. BF180435A) <br><br><br> **OPINION** |

## THE COURT[*]

APPEAL from a judgment of the Superior Court of Kern County.  David R. Zulfa, Judge.

John F. Schuck, under appointment by the Court of Appeal, for Defendant and Appellant.

Office of the State Attorney General, Sacramento, California, for Plaintiff and Respondent.

-ooOoo-

---

[*] Before Peña, Acting P. J., Snauffer, J., and De Santos, J.

## STATEMENT OF APPEALABILITY

This appeal is from a final judgment which disposes of all issues between the parties. (Pen. Code, § 1237,[1] Cal. Rules of Court, rule 8.304(a).)

## STATEMENT OF THE CASE

On July 29, 2020,[2] after a preliminary examination, an information was filed charging Scott with first degree burglary (§ 460, subd. (a); count 1); assault with a deadly weapon, a pickaxe (§ 245, subd. (a)(1); count 2); and misdemeanor resisting arrest (§ 148, subd. (a)(1), count 3). As to count 1, it was further alleged that a person other than an accomplice was present in the residence and that Scott personally used a deadly weapon, a pickaxe. (§§ 667.5, subd. (c)(21), 12022, subd. (b)(2).)

On October 26, trial commenced. Count 3 was dismissed. On November 4, the jury found Scott guilty on counts 1 and 2. The person present and use allegations were found true.

On December 2, Scott was sentenced to the upper term of 6 years in prison on count 1. The use allegation was stricken by the court. The sentence of 4 years on count 2 was stayed pursuant to section 654. Various fines and fees were imposed. Scott received 69 days presentence custody credit.

On December 23, Scott filed a timely notice of appeal.

## STATEMENT OF FACTS

### A.    The Prosecution's Case

On March 16, between 11:00 and 11:30 p.m., five members of the M. family were at their Bakersfield residence. E., his wife M., and his mother B. were in the kitchen; R. and G. were in their respective bedrooms. E. and M. live in a motor home/trailer on the back patio.

---

[1] Subsequent statutory references are to the Penal Code.

[2] Subsequent references to dates are to dates in 2020 unless otherwise stated.

When E. went outside to go to his motor home, he saw Scott "coming in our back gate." E. told Scott that he was not allowed there. Scott said he was looking for his girlfriend, B.M., a friend of E.'s wife. E. again told Scott he was not allowed to be there, told him his girlfriend was not there, and that Scott "needed to go."

When Scott said, "Well, I'm looking for [my girlfriend]," E. said it did not matter and that he was not allowed there. Scott said, "What are you going to do about it?" E. pushed Scott. Scott picked up a pickaxe that was lying in the yard. E. said, "I'll call the law on you" and turned to run into the house. Scott chased him, carrying the pickaxe. E., who was scared because Scott was chasing him, entered the residence through a rear sliding-glass door. He shut the door and went into the kitchen. Scott entered the house through the sliding glass door, hitting and scratching it with the pickaxe as he did so. Scott chased E. into the living room. E. picked up a wooden chair to use as a shield to defend himself. Scott came into the room "swinging that pickaxe." As Scott swung the pickaxe, he hit the chair. Scott forcefully swung the pickaxe at E. E. testified, "He was planning on injuring me with it."

While in the kitchen, E.'s wife M.[3] heard a loud bang. She then saw E. run in through the sliding glass door, through the kitchen, and into the living room; Scott was "chasing him with a pickaxe." M. looked down the hall and "heard scuffling." E.'s mom B. saw E. come through the sliding glass door "backing up frantically swearing, … 'Get the F out of here.'" E. had his hands up. She heard a loud bang. B. ran down the hall and into the bedroom she shared with her husband. She snuck back into the kitchen, got her phone, went back into the bedroom, and called the police. She heard "all the commotion." B. told M. to go outside; M. went outside.

From his bedroom, E.'s brother R. "heard a commotion going on in the front room." He went into the front room and saw Scott "with something in his hand swinging

---

[3] In April 2016, M. had been convicted of misdemeanor shoplifting.

it at [his] brother who was holding a chair." R. saw Scott swing the object at least five or six times. To protect E., R. "bull-rushed" Scott into a cabinet and "just start[ed] wailing away at him"; E. joined in to restrain Scott. The pickaxe fell to the floor. R. tackled Scott and they fell into the kitchen; R. continued to hit Scott. At some point, Scott said, "Okay. All right. I quit. Let me up. Let me up." E. and R. detained Scott on the floor until the police arrived.

After calling 911, B. went into the kitchen and saw E. and R. wrestling with Scott and trying to subdue him. E. and R. sustained minor scrapes and bruises as a result of their struggle with Scott, and R. broke his hand as a result of hitting Scott. E. denied approaching Scott with the pickaxe, hitting him with it, or swinging it at him. E. did not reply "F you" to Scott's question whether his girlfriend was there. E. did not hit Scott with the chair.

E. testified the pickaxe made a dent or a "strike mark" on the chair he had been holding. Scott may also have hit a closet door with the pickaxe. R. testified he saw wood chips flying from the chair as a result of Scott hitting it with the pickaxe.

Officer Aaron Waddle responded to the scene and found Scott on the kitchen floor. He placed Scott in his patrol car, then collected the pickaxe. Officer Waddle did not notice any wood chips on the floor, and R. did not tell him that there were wood chips on the floor.

## B.    DEFENSE CASE

Scott[4] testified that he got off work at around 11:30 p.m. on March 16 and went to the M. family's house to see his girlfriend. He had been told she was there. He had been to E. and M.'s trailer on a previous occasion to see his girlfriend and had entered through the side gate; he believed that such entry was permissible.

---

[4] Scott has several prior convictions.

Scott parked his car and walked to the gate on the side of the house. He opened it, took one step, and saw E. Scott asked if his girlfriend was there. E. said, "No F you," and swung a pickaxe at Scott, hitting him in the right rear shoulder. E. never said that Scott's girlfriend was not there nor did he say he was going to call the police. Scott was not aggressive and did not challenge E. to a fight.

After being hit with the pickaxe, Scott dropped to one knee and saw E. swinging the pickaxe. Scott reached up and grabbed E.'s hand, "preventing him from hitting me a second time." Scott grabbed the pickaxe. Although he did not "remember much," Scott recalled following E. into the house. Scott went into the house because he felt threatened, wanted to make sure E. did not have any other weapons, and to see if his girlfriend was there. He chased E. Scott did not hit the sliding glass door with the pickaxe.

Scott entered the kitchen and then went into the dining room. E. was holding a chair and pushed it out into Scott's face. E. then hit Scott "across the face with it." Being hit with a chair put Scott on the floor. Scott never swung the pickaxe at E. If the pickaxe touched the chair, it was only because Scott was protecting himself from the chair. Scott remembered "a bunch of fists hitting [him]." He was punched "viciously … many times." He sustained numerous injuries.

## APPELLATE COURT REVIEW

Scott's appointed appellate counsel has filed an opening brief that summarizes the pertinent facts, raises no issues, and requests this court to review the record independently. (*People v. Wende* (1979) 25 Cal.3d 436.) The opening brief also includes the declaration of appellate counsel indicating Scott was advised he could file his own brief with this court. By letter on April 19, 2021, we invited Scott to submit additional briefing. To date, he has not done so.

Having undertaken an examination of the entire record, we find no evidence of ineffective assistance of counsel or any other arguable error that would result in a disposition more favorable to Scott.

## DISPOSITION

The judgment is affirmed.